IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MB INDUSTRIES, LLC,<br>601 Benton Kelly Street<br>Shreveport, LA 71106,<br><br>      Plaintiff,<br><br>v.<br><br>PATTON BOGGS LLP,<br>2550 M Street, NW<br>Washington, DC 20037,<br><br>Serve on:  Registered Agent<br>              Stuart M. Pape<br>              2550 M Street, NW<br>              Washington, DC 20037,<br><br>      Defendant. | Case No.: _____<br><br>JURY TRIAL REQUESTED |

## COMPLAINT

COMES NOW Plaintiff, MB Industries, LLC, by and through its counsel, Seeger, P.C., and files the following complaint for breach of contract, breach of fiduciary duty, and breach of the implied duty of good faith and fair dealing against Defendant Patton Boggs LLP and states as follows:

## PARTIES

1. MB Industries, LLC ("MBI" or "Plaintiff") is organized and existing under the laws of the state of Louisiana with its principal place of business at 601 Benton Kelly Street, Shreveport, LA 71106.

2. Patton Boggs LLP ("Patton Boggs" or "Defendant") is organized and existing under the laws of the District of Columbia with its principal place of business at 2550 M Street, NW, Washington, DC 20037.

## JURISDICTION AND VENUE

3. The Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(a). There is complete diversity of citizenship among the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.

4. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b). The Defendant resides in this judicial district and a substantial part of the events or omissions giving rise to this action occurred in this judicial district.

## BACKGROUND FACTS

5. MBI sells and manufactures blast resistant buildings. In late 2008, MBI sought to expand its business by entering the international market for blast resistant buildings and by developing additional business with the United States federal government. MBI appointed two of its officers, Milo Nickel and Thomas LeBlanc, with this task of expanding MBI's international and federal business.

6. On or about December 15, 2008, Mr. Nickel and Mr. LeBlanc met with representatives of Patton Boggs, Colonel (ret.) John Garrett and Heather Sibbison, regarding retaining Patton Boggs's services, including but not limited to, expanding its business, specifically with the federal government.

7. Shortly after this meeting, Patton Boggs submitted a proposal to MBI detailing the ways in which Patton Boggs would assist MBI in developing its federal government and

international marketing (the "Proposal"). The Proposal is attached to this Complaint as Exhibit A.

8. In the Proposal, Patton Boggs stated that its representation of MBI would include, but not be limited to, the following objectives: "Help MBI become a major player with the numerous agencies within the U.S. Department of Defense;" "Help MBI become a major player with the numerous agencies at the U.S. Department of Homeland Security;" "Assist in reaching intelligence agencies;" and "Use the broader legislative process to expand MBI's business and protect it from outside challenges." See Ex. A at 4-6.

9. In furtherance of these general objectives, Patton Boggs agreed to take the following actions, among others, on MBI's behalf: "We will make the key connection with the people who have the requirements for and authority to procure your products;" "We will assist you in bringing MBI to the attention of the appropriate decision makers in DHS;" "We will help you engage top-level decision makers at [intelligence] agencies to reach a contracting decision from the top-down as a complement to bottom-up contracts and orientation to generate user-level demand;" and "Use our network of clients and relationships at the state and local government level to help put MBI in front of political and bureaucratic players with the authority to purchase your products." Id. Additionally Patton Boggs stated that its goals in helping protect MBI from outside challenges would include:

    A. Building Congressional awareness of MBI products inside the federal government's homeland security, defense, and law enforcement systems.

    B. Providing information on the need for greater Congressional oversight of how the federal government spends funds to house its defense and homeland security core staff.

    C. Educating Congress about the benefits of MBI products and the potential downsides of choosing competing products offered by entities lacking experience in this highly specialized marketplace.

    D. Building a network of relationships that MBI can use in the future since inevitability success in the federal procurement marketplace often brings Congressional scrutiny driven by unsuccessful competitors.

Id. at 6.

10. Patton Boggs summarized its strategy for MBI as follows: "In helping to plan and execute your comprehensive federal marketing and government relations program, we will focus on helping you develop a persuasive and clear narrative about MBI. That narrative will focus on explaining how your products provide information effectiveness and help the government make more efficient use of taxpayer funds." Id.

11. Based on Patton Boggs's representations, MBI engaged Patton Boggs to market and represent MBI beginning on or about December 2008.

12. Between December 2008 and July 2009, Col. Garrett on behalf of Patton Boggs marketed MBI's products and services to several of Patton Boggs's international and federal government contacts. Col. Garrett accomplished this, in part, by introducing Mr. Nickel and Mr. LeBlanc as MBI's representatives to these contacts and by recommending that these contacts conduct business with MBI. Also, Col. Garrett advised his government contacts of MBI's qualifications and vouched for MBI and its products. As noted in a recent Washington Post article, Col. Garrett's recommendations are given significant weight in government contracting circles.[1] Indeed, former White House aide under Richard Nixon and current deputy undersecretary of defense, Noel Koch stated: "If John Garrett was vouching for him, that was good enough for me."[2]

---

[1] Kevin Sullivan, *Fraud Suspect Kevin Richard Halligen Allegedly Posed As A Spy and Cheated the Elite on Both Sides of the Atlantic*, The Washington Post (June 9, 2012), http://www.washingtonpost.com/lifestyle/style/fraud-suspect-kevin-richard-halligen-allegedly-posed-as-a-spy-and-cheated-the-elite-on-both-sides-of-the-atlantic/2012/06/09/gJQA3gdwQV_story.html.

[2] Id.

13. On information and belief, in 2008, Mr. Nickel and Mr. LeBlanc began exploring the possibility of leaving MBI and joining one of MBI's competitors, Hunter Buildings & Manufacturing, LP ("Hunter"). By early 2009, Mr. Nickel and Mr. LeBlanc had firm plans to leave MBI. Finally, at some point prior to August 2009, Mr. LeBlanc resigned from MBI. Mr. Nickel resigned from MBI in or around August 2009.

14. During the time and after Mr. Nickel and Mr. LeBlanc left MBI, Patton Boggs marketed Mr. Nickel and Mr. LeBlanc's new company, Hunter, to MBI's contacts.

15. Patton Boggs failed to meet its contractual obligations to market MBI, and Patton Boggs was affirmatively marketing against MBI's interests.

16. In or around September 2009, Patton Boggs set up a meeting for Mr. Nickel and Mr. LeBlanc, who were then no longer employed with MBI, with key contacts in the Overseas Billing Office of the United States Department of State.

17. Additionally, Patton Boggs marketed Hunter's products and services to customers in MBI's market, including Framaco International, Maxam, and AISG.

18. Incredibly, while MBI was will a client of Patton Boggs, in an email to Framaco International[3] dated August 28, 2009, Col. Garrett represented that Mr. Nickel and Mr. LeBlanc were clients of Patton Boggs and stated: "All my research, including a visit with [Mr. Nickel] and [Mr. LeBlanc] at the Houston, Tx headquarters and Plant Facility of Hunter tells me that Hunter has a better product and overall offering than MBI."

19. Contrary to his statement, at the time when Col. Garrett sent this email he had not visited Hunter's headquarters and had not have made an objective analysis of Hunter's products compared to MBI's.

---

[3] Framaco International is a U.S.-based construction management and procurement company that manages a considerable number of projects with the United States government, especially in defense.

20. This statement, along with several other misleading and deceptive statements made to MBI's potential customers, rendered any prior marketing work by Patton Boggs for MBI meaningless and irreparably harmed MBI's reputation in the marketplace, thereby significantly damaging MBI's business prospects. This harm to MBI's reputation is even more substantial given the weight afforded to Col. Garrett's recommendations, as discussed above.

21. During September and October 2009, Col. Garrett continued to market Mr. Nickel, Mr. LeBlanc, and Hunter. At some point, in late September or early October 2009, Heather Sibbison and Charles Talisman of Patton Boggs became aware of Col. Garrett's activities. However, Col. Garrett continued to assist Mr. Nickel and Mr. LeBlanc in negotiating a partnership with AISG as late as October 14, 2009. Indeed, it was not until October 27, 2009 that Ms. Sibbison and Mr. Talisman informed Col. Garrett that his actions on behalf of Mr. Nickel and Mr. LeBlanc were improper and that he could no longer provide services to Hunter without MBI's consent. At this point, however, MBI had already been severely harmed by Col. Garrett's actions.

22. At the time Col. Garrett defamed MBI and while marketing for its competitor, MBI believed that Patton Boggs was still representing MBI and was supposed to be marking MBI to the very clients to which it was marketing Hunter.

23. Patton Boggs billed and MBI paid approximately $81,826.25 for Patton Boggs's services.

### COUNT I
### Breach of Contract

24. Plaintiff reasserts and incorporates by reference paragraphs 1-23 above as though they were stated fully herein.

25. Defendant and MBI had an enforceable contract under which Defendant would, among other things: help MBI become a major player with the numerous agencies within the U.S. Department of Defense; help MBI become a major player with the numerous agencies at the U.S. Department of Homeland Security; assist in reaching intelligence agencies; and use the broader legislative process to expand MBI's business and protect it from outside challenges.

26. Defendant intentionally and maliciously breached its contract by, among other things, marketing a competing business instead of MBI and by disparaging MBI to potential customers.

27. As a direct result of Defendant's breach, MBI suffered damages of no less than $81,826.25 in fees paid to Patton Boggs, in addition to lost profits and lost goodwill in the marketplace.

28. Defendant has met all conditions precedent to filing this claim for breach of contract.

## COUNT II
### Breach of Fiduciary Duty

29. Plaintiff reasserts and incorporates by reference paragraphs 1-28 above as though they were fully stated herein.

30. Defendant owed a fiduciary duty to MBI as Defendant was authorized to act on MBI's behalf in marketing MBI to contacts with the federal government and internationally.

31. Defendant intentionally and maliciously breached its fiduciary duty by affirmatively marketing against MBI's interests and supporting one of MBI's competitors. Additionally, Defendant disparaged MBI and irreparably harmed MBI's reputation in the marketplace.

32.     As a result of Defendant's breach, MBI suffered damages of no less than $81,826.25 in fees paid to Patton Boggs, in addition to lost profits and lost goodwill in the marketplace.  Further, because Defendant's breach was so egregious, MBI is entitled to punitive damages in the amount of no less than $500,000.

## COUNT III
## Breach of the Implied Duty of Good Faith and Fair Dealing

33.     Plaintiff reasserts and incorporates by reference paragraphs 1-32 above as though they were fully stated herein.

34.     In every contract, there is an implied duty of good faith and fair dealing under which neither party shall do anything that will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract.

35.     Defendant breached its duty of good faith and fair dealing by affirmatively marketing against MBI's interests and supporting one of MBI's competitors and by disparaging MBI and irreparably harmed MBI's reputation in the marketplace.  As a result of Defendant's actions, MBI could not receive the benefit of any marketing Defendant may have actually performed on MBI's behalf.

36.     As a result of Defendant's breach, MBI suffered damages of no less than $81,826.25 in fees paid to Patton Boggs, in addition to lost profits and lost goodwill in the marketplace.  Further, because Defendant's breach was so egregious, MBI is entitled to punitive damages in the amount of no less than $500,000.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff MB Industries, LLC respectfully requests judgment against Defendant Patton Boggs LLP in the amount of $81,826.25 in compensatory damages, $500,000

in punitive damages, interest, costs, attorneys' fees, and for such other relief as this Court deems just.

## JURY TRIAL DEMAND

Plaintiff MB Industries, LLC respectfully requests a trial by jury on all issues.

Respectfully submitted,

SEEGER, P.C.

By:   /s/ Seth A. Robbins
Seth A. Robbins (D.C. Bar No. 471812)
Christopher M. Sweeney (D.C. Bar No. 1002589)
2620 P Street, NW
Washington, DC 20007
Telephone: (202) 822-8838
Facsimile: (202) 822-6982
E-mail: robbins@seeger-law.com
sweeney@seeger-law.com
**COUNSEL FOR PLAINTIFF**